EDWARD NARY *vs.* WILLIAM G. MERRILL & another.

If the validity of a mortgage made by an insolvent debtor upon his homestead to secure a preëxisting debt, within six months previous to the commencement of proceedings in insolvency, is questioned on the ground that it was not made in the usual and ordinary course of his business, and the evidence simply shows that he was a millwright, and had no other occupation or business, the jury should be instructed that the mortgage was not made in the usual and ordinary course of his business.

WRIT OF ENTRY to foreclose a mortgage given by one Gardner, one of the defendants, to the plaintiff.

At the trial in the superior court, before *Rockwell*, J., a verdict was found for the plaintiff, and the judge signed a bill of exceptions showing the following facts : The defendant Merrill is the assignee in insolvency of the defendant Gardner, and the mortgage was executed within six months before the commencement of the proceedings in insolvency, to secure a preëxisting debt. Gardner was a millwright, and had no other occupation or business, and was and for many years had been the owner of the mortgaged premises as a homestead. Merrill contended that the mortgage was in contravention of Gen. Sts. *c.* 118, §§ 89, 91, and therefore void, and requested the court to instruct the jury that if Gardner, being insolvent, and having no business except as a millwright, made the mortgage to secure a preëxisting debt, such mortgage would not be in the usual and ordinary course of his business, and so would be *prima facie* evidence of a reasonable cause of belief by the plaintiff that Gardner was insolvent or in contemplation of insolvency. The judge declined so to rule, and instructed the jury that, if they should find " that Gardner made the conveyance with a view to prevent the property from going into the hands of the assignee, and that the plaintiff had reasonable cause to believe that Gardner was insolvent or in contemplation of insolvency, and if the mortgage was not made in the usual and ordinary course of Gardner's business, they might consider that fact as *prima facie* evidence of such cause of belief."

The defendants alleged exceptions.

*M. Wilcox*, (*J. E. Field* with him,) for the defendants.

*H. W. Bishop & B. Palmer,* for the plaintiff.

HOAR, J.   When a mortgage is made by a person actually insolvent or in contemplation of insolvency, to secure a pre-existing debt, within six months previous to the commencement of proceedings in insolvency by or against him, it may be avoided by his assignee in insolvency, if the mortgagee had reasonable cause to believe him insolvent at the time he took the mortgage, and that the conveyance was made to impede the operation of the insolvent laws ; and it is made *prima facie* evidence of such cause of belief, if the conveyance " is not made in the usual and ordinary course of business of the debtor." Gen. Sts. *c.* 118, § 91.

The question at the trial upon which the point presented by the bill of exceptions arises was, whether the mortgage under which the plaintiff claims was made " in the usual and ordinary course of business of the debtor." It appeared that the insolvent debtor was a millwright, and had no other occupation or business, and for many years had been the owner of the mortgaged premises as a homestead. The defendant asked the court to instruct the jury as matter of law that upon these facts the conveyance would not be in the usual and ordinary course of business of · the debtor ; but the presiding judge refused to give the instruction asked, and instructed them. simply in the language of the statute.

There can be no doubt that the instruction given was correct, so far as it went. And it is not certain that the instruction asked, considered as a general and abstract proposition, can be maintained. We cannot say as an absolute rule of law that a millwright may not so carry on his business, that making mortgages of his real estate shall be " in the usual and ordinary course " of it. He might, in the usual course of business, make contracts for the erection of mills, which would require the use of more capital than he had, and which would oblige him to obtain materials on credit, or to borrow money to purchase them. He might often find that the returns from his business were not received so soon as to enable him to meet his payments ; and that an extension of his credits would involve the necessity of

giving security.   This very mortgage might have been given as security for an ordinary business obligation, and he might have made a similar one for a similar purpose a dozen times before. If such were the facts, the making of this mortgage could not have been regarded as furnishing any reasonable cause of belief of his insolvency to the mortgage creditor.

But, on the contrary, if no such state of facts was shown to exist; indeed, if no other facts appeared in evidence than those which the bill of exceptions discloses, it is obvious that a mortgage of his homestead to secure a preëxistent debt would not be in the usual and ordinary course of business of the debtor; and the jury should have been so instructed.   The question is not whether such transactions are usual in the general conduct of business throughout the community, but whether they are according to the usual course of business of the particular person whose conveyance is the subject of investigation.   If it is a departure from his usual and ordinary course of business, the statute intends that the party taking the conveyance from him shall be put upon inquiry.   The difficulty which presents itself arises from the meagre report of the evidence at the trial which is given in the bill of exceptions.   If it is fairly to be inferred from that report that these were all the facts appearing, and that upon these facts the presiding judge refused to give the instructions asked, and left the whole matter to the jury, without any explanation as to what would be meant by the language of the statute, we should think that a new trial ought to be granted; not because the instructions were erroneous, but because they were insufficient, and not such as the posture of the case required.   The instructions asked, if not in terms a perfect and complete enunciation of the rule of law, would have been practically the result of the case presented to the jury.   If they had been given in the very terms of the defendant's prayer, and he had obtained a verdict, they would not, as applied to the facts disclosed, have been so substantially incorrect as to make it necessary to set it aside.

And we are inclined to think that such is the just inference to be drawn from the statements in the bill of exceptions.

Nothing else appears ; and although the defendant did not incorporate in his prayer for instructions the negative statement that there was no other evidence before the jury, it might be fairly implied.                                     *Exceptions sustained.*